```
              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| In Re: Stuart Robert Hansen | : CHAPTER 7 |
|---|---|
| | : NO. 11-10472SR |
| | : |
| Debtor | : HEARING DATE: May 19, 2011 |
| | : TIME: 10:30 A.M. |
| | : LOCATION: COURT ROOM No. 4 |
| | : United States Bankruptcy Ct. |
| | : 900 Market St., 2nd Floor |
| | : Philadelphia, PA 19107 |

**MOTION OF ROSYLN HANSEN TO DISMISS DEBTOR'S
BANKRUPTCY CASE FOR CAUSE PURSUANT TO 11 U.S.C. §707(a)**

And now comes the Movant, Rosyln Hansen, by and through her attorney, Michael W. Gallagher, Esquire, and does pray this Honorable Court DISMISS the Debtor's Chapter 7 case pursuant to 11 U.S.C. §707(a), with prejudice, and in support thereof does say and aver as follows:

1. The Movant is Rosyln Hansen, an individual residing at 1161 Brian's Way, Wayne, PA 19087, and a creditor of the debtor.

2. The Respondent is the Debtor, Stuart Robert Hansen.

3. The Movant is a judgment creditor of the Debtor, by way of a civil action and judgment with said judgment presently amounting to $1,210,214.10 as of April 6, 2011.

4. Said judgment was entered pursuant to a Verdict in a bench trial before the Hon. Charles B. Burr, II of the Court of Common Pleas, Delaware County, wherein the court found that Debtor breached a partnership agreement requiring him to pay the proceeds

of a $1,000,000.00 life insurance policy to his sister-in-law, Movant Roslyn Hansen, upon the death of her husband, George C. Hansen, Jr, in order to compensate her for the fair value of George's one-half interest in the family company, the Hansen Paper Company.

5. Rather than pay the proceeds of the life insurance policy to his brother's widow, Stuart kept the proceeds for his own benefit. As found by the Court in a lengthy post-trial opinion, "there was no reason for [Debtor, Stuart Hansen] not to pay the plaintiff besides his own unmitigated avarice and greed." *See Hansen v. Hansen,* 16 Pa. D. & C. 5th 241, 260, 2010 WL 5657047 (Pa. CCP Del. Co. Aug. 31, 2010) (quoting at length from opinion of Oct. 23, 2006).

6. To this date, the Debtor has refused to pay this lawful judgment. Debtor has taken affirmative and secret steps to transfer assets in order to avoid paying the judgment.

7. The Debtor filed the instant bankruptcy petition two (2) days before a scheduled day of hearings in state court on: a Motion for Contempt against Stuart Hansen, Motion for Contempt against the Hansen Paper Co., Inc. ("HPCo., Inc.") (Stuart's wholly-owned company), a Preliminary Injunction (preventing the HPCo., Inc. from continuing to pay Stuart's personal creditors out of corporate coffers), and an Emergency Motion for the Appointment of a Receiver (to manage the HPCo., Inc.).

8. The instant petition is part of Debtor's continuing disobedience of the state court's judgment and continuing fraud on Roslyn Hansen and the courts.

9. At the time of filing, Debtor listed assets, allegedly owned with his wife, (who is not a party to this bankruptcy case), in the amount of $3,375,970.47, and liabilities of $6,188,615.18. In those liabilities the Respondent listed the claim of the Movant, which Debtor set at $1,000,000.00, and an alleged "second mortgage to secure business guarantee" of $2,568,837.00.

10. The meeting of creditors pursuant to 11 U.S.C. §341(a) was held on February 18, 2011.

11. At the Meeting of Creditors, the Debtor did acknowledge that the aforesaid "second mortgage" was not, in fact, a secured claim, but a mere contingent claim for a guarantee of a loan or debt of his business, which has not been called.

12. The Debtor did not supply any proof or evidence of the valuation of the assets he listed, aside from a real estate tax assessment upon his home, and did not provide the Trustee with a copy of his most recent tax return or returns, in violation of 11 U.S.C. §521(d). The tax returns were provided at a later date. Movant, through counsel, has been informed that as of March 28, 2011, the Debtor has not yet provided any additional documentation to the Trustee.

13. Schedule I of Debtor's schedules list income for the

Debtor of $20,777.68 per month, and income for his wife of $4,000.00 per month. Despite allegedly paying medical and life insurance, and college tuition and expenses for one son, (expenses that are, upon information and belief, paid by the HPCo., Inc.) the Debtor's Schedule I states that he and his wife have no dependents.

14. Debtor's Schedule J lists expenses of $27,024.03 per month, including a mortgage payment of $8,148.87, general utilities of $1,224.42 per month (exclusive of telephone and cable), home maintenance (on a three-year old house) of $2,111.50, health insurance for three people of $2,081.00 per month, life insurance of $1,898.00 per month, and car payment or payments of $1,452.76 per month.  Upon information and belief, many of these expenses were or are paid by the HPCo., Inc., not by Debtor.

15.  The Debtor and his wife live in a waterfront mansion on the Corsica River in Maryland that Debtor, in a November 3, 2009 deposition, testified was appraised at $4,000,000.  (*See* Exhibit "A" hereto, photo of mansion).

16. Immediately prior to filing, the Debtor did, with his wife, purchase a 2011 BMW 550 automobile, financing it through BMW Financial Services to the tune of $79,329.21 (Schedule D of Debtor's Petition).

17. Debtor's other vehicles include a classic 1968

Pontiac GTO which the debtor, at the 341 Meeting, did admit was in pristine condition, and a 2008 GMC Yukon, according to Schedule B. At the 341 Meeting debtor stated that he had traded in the Yukon for yet another BMW. Movant does not know what additional monies were paid, or indebtedness incurred, in relation to this transaction.

    18. Debtor also owns a fishing boat, a sail boat and at least one other boat.

    19. Debtor stated in his schedules that he owns, along with his wife, 100% of the stock in the Hansen Paper Co., and did purport to exempt it by claiming that it is owned with his wife by the entireties.

    20. In fact, this is a deliberate prevarication: Debtor is fully aware that a court of competent jurisdiction has already entered a finding that he and he alone is the owner of that stock and that corporation as 100% shareholder. *See Hansen*, 16 Pa. D. & C. 5th 241, 275 ("There is no question that the Defendant alone owns a 100 percent interest in the Hansen Paper Company, Inc").

    21. As such, no entireties exemption is applicable to this stock or the ownership of the corporation.

    22. Further, prior to the filing of the present bankruptcy case, the Debtor was ordered by a court of competent jurisdiction to turn over the stock in said corporation to the Movant. *See id.* at 266-68.

23. Thus, property which the Debtor claims is property of the Debtor and his spouse is, in fact, property of the Movant, a fact which the Debtor knows full well.

24. Debtor claims that the stock is worth nothing, listing the value of the company and/or its stock as $0.00. This same "poor mouth" act was twice rejected by the state court. *See e.g., id.* at 260.

25. Debtor fails to explain how a company which pays him an income of at least $20,777.68 per month above his wages, and pays his wife rental income for the offices of the business of $4,000.00 per month, is "worthless".

26. On or about December 23, 2008, the Debtor did allow his wife to purchase the office property of Hansen Enterprises in a deed in lieu of foreclosure. Said wife did previously secure an assignment of the mortgage on said premises.

27. Debtor's wife does not appear to have had an independent income stream at that time, and therefore it is reasonably believed that the Debtor's wife must have received the funds from the Debtor himself.

28. Movant believes this was done solely to "launder" the title to that property, and remove assets in Debtor's possession directly, or through ownership of the corporation, which might otherwise be available to repay creditors, particularly the Movant.

29. Respondent, through the corporation he alone owns and controls, is paying funds to insiders, specifically himself - by way of cash and payments to his individual creditors out of corporate coffers, and his wife - by way of rental payments of $4,000.00 per month for the business property at 13 East Central Avenue, Paoli.

30. Debtor has failed to make any lifestyle adjustments prior to or since the filing of his case, despite asking the court for the relief granted under Chapter 7 of the Code, and continues living in an expensive and lavish multi-millionaire's lifestyle, complete with yacht and cricket club memberships and garden parties.

31. The Debtor filed his Petition for Relief under Chapter 7 in response to the judgment in the state case, and the Order of the state court judge that he surrender the stock in the corporation to the Movant.

32. The Debtor, despite an expensive lifestyle, excellent income, and significant assets, has made no attempt to repay the Movant.

33. In his schedules, Debtor lists debts to several credit cards. However, Debtor also testified under oath, under examination from counsel for Movant, that the Hansen Paper Company, Inc. pays his personal credit card bills. It is therefore believed that Hansen Paper Company may well have already paid these charges, or will do so in the near future,

and that such fact was and is known to the Defendant.

34. The only other unsecured debt, aside from the Movant, which the Debtor lists on his schedules is a "loan from business" from the Hansen Paper Co., Inc. of $782,189.00. However, the Debtor also purports a right to retain the stock in the company, making it, in effect, a "loan" from himself.

35. This "loan from business" is a sham. As a result of the state court litigation, in late 2009 Stuart and the Hansen Paper Company, Inc. began an attempt to dress-up as a "loan" nearly $800,000.00 Stuart took from the company to pay his personal obligations (mortgage, college tuition, etc) since 2006. Debtor even directed his attorneys and accountants to fashion a sham "promissory note", drafted in the transparent attempt to give an air of legitimacy to Stuart's use of the company to pay his personal bills, tax free with no obligation to pay back – all in the effort to defraud Movant. Upon information and belief, no "promissory note" for this bogus "loan" was ever signed.

36. Therefore, this is effectively a "single creditor" bankruptcy, where the only debt which would be discharged is the one owed to the Movant.

37. The Debtor has significant resources available to pay the judgment to the Movant.

38. Considering the income and assets of the Respondent Debtor, the use of Chapter 7 is grossly unfair and this petition was filed in the effort to defraud Movant.

39. The Debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of his creditors, specifically the Movant.

40. The Debtor has employed a deliberate and persistent pattern of evading a single major creditor, the Movant.

WHEREFORE, the Movant, Roslyn Hansen, prays this Honorable Court DISMISS the Respondent's Chapter 7 case, with prejudice.

Respectfully submitted,

/s/ Michael W. Gallagher
Michael W. Gallagher, Esquire
628 Germantown Pike
Lafayette Hill, PA 19444
(610)940-4730
(610)940-6025 Fax
Attorney for Movant
Roslyn Hansen, Only.

/s/ Andrew M. Milz
Cary L. Flitter
Theodore E. Lorenz
Andrew M. Milz
Lundy, Flitter, Beldecos
& Berger, P.C.
450 N. Narberth Avenue
Narberth, PA 19072
610-822-0782
610-667-0552(Fax)

**Attorneys for Roslyn Hansen**