1    **United States Bankruptcy Court**

2    **Eastern District of Pennsylvania**

3

4    ———————————————                    Case Number: 11-10472-SR

5                                       Courtroom #1

6        In the matter of:             900 Market Street
                                       Philadelphia, Pennsylvania
7
                                       Date:  June 07, 2011
8    STUART ROBERT HANSEN,
                                       Time:  10:32
9              Debtor.

10   ———————————————

11

12                    **Motion to Dismiss Case**

13
              BEFORE THE HONORABLE STEPHEN RASLAVICH
14              UNITED STATES BANKRUPTCY JUDGE

15

16   **Appearances:**

17   David B. Smith, Esq.              Counsel for Debtor

18   Michael Gallagher, Esq.           Counsel for Rosalyn Hansen
     Andrew Milz, Esq.
19

20   This proceeding was recorded via electronic sound recording and this transcript
     was provided by:
21
                      **BHI Business Services**
22                    24 Indian Pipe Drive
                      Wynantskill, New York 12198
23                    518-283-8888
                      email: bhitranscripts@gmail.com
24

25

1    THE COURT: This leaves the Hansen matter.

2    Come on up folks.

3    MR. GALLAGHER: Good morning, your Honor,

4    Michael Gallagher for Rosalyn Hansen.

5    THE COURT: Good morning.

6    MR. SMITH: Good morning your Honor, David

7    Smith on behalf of Stuart Hansen.

8    MR. MILZ: Andrew Milz on behalf of Rosalyn

9    Hansen your Honor.

10    THE COURT: Okay, good morning.

11    Well when we were here on the 24th I

12    indicated to you that I would issue a decision

13    on the motion to dismiss the case when we

14    reconvened this morning.  I am aware that a

15    motion to convert the case from Chapter 7 to

16    Chapter 11 was filed at 17 minutes past midnight

17    this morning.  In the papers Mr. Smith you

18    accurately observed it, pursuant to our local

19    rules a motion to convert such as was filed may

20    be addressed by the Court without a hearing. I

21    will view that.  The motion will be denied for

22    reasons that I will address.  But, I think in

23    order to do that it is appropriate that I give

24    you the decision that I promised you with

25    respect to the motion to dismiss this case as a

1    Chapter 7 case for the reason that a great deal

2    of the facts and legal principles germain to the

3    motion to dismiss the case - - excuse me the

4    motion to convert the case are implicated in the

5    motion to dismiss the case.  That is to say that

6    there is a substantial degree of overlapping in

7    connection with the factors, objective factors

8    that courts consider in evaluating the requisite

9    good faith requirement that exists in the

10   context of the case under Chapter 7 as well as

11   the case under Chapter 11.

12       So, before I address the motion to convert

13   I'm going to address the motion to dismiss.

14       Typically I would, in a case like this,

15   have reduced the ruling to a writing but as I

16   explained to you when we adjourned when we were

17   here last I was going to be out last week and

18   frankly my computer skills are such that it was

19   not possible for me to prepare the more

20   traditional written opinion for your benefit,

21   but I assure you that I studied the record at

22   great length and under the circumstances I will

23   read to you the decision and you will allow the

24   transcript to serve as the memorialization of

25   the ruling on both matters.

1       So, with that further ado if you'll bear

2   with me for a second.  All right.

3       The Court has before it a motion to dismiss

4   this bankruptcy case for cause under Bankruptcy

5   Code Section 707a.  This contested matter is a

6   core proceeding under this Court's jurisdiction

7   as set forth in Section 157 of Title 28.  This

8   bench ruling will constitute this Court's

9   findings of fact and conclusions of law as

10  required by Bankruptcy Rule 7052.   Bankruptcy

11  Code section 707a provides that after notice and

12  a hearing the Bankruptcy Court may dismiss a

13  Chapter 7 case for cause and it gives three

14  illustrative, that is to say non-exclusive

15  examples of cause which would justify the

16  dismissal of a Chapter 7 case.  They are one,

17  unreasonable delay by the debtor which is

18  prejudicial to creditors, two of nonpayment of

19  required fees, and three, failure to file with

20  the court the information required of the debtor

21  under Bankruptcy Code section 521.

22       As stated is asked examples are merely

23  illustrative in the court may dismiss a Chapter

24  7 case on other grounds one causes found to

25  exist.   The court has substantial discretion

in ruling on a motion to dismiss a case under

sections 707a, and in exercising that

discretion.   The court must consider extenuating

circumstances as well as the interests of the

various parties.     In this circuit the seminal

case on point is In re Tamecki.   The Third

Circuit Court of Appeals decision issued in the

year 2000 and reported at 229 Fed 3rd beginning

at page 205.

In Tamecki the Circuit Court observed that

the Bankruptcy Code does not define good faith.

But, it noted that the courts in this circuit

have uniformly held that at the very least good

faith requires a showing of honest intention.

That said are Circuit Court also noted with

approval an earlier decision by the Sixth

Circuit Court of Appeals wherein that circuit

court cautioned that a dismissal based on lack

of good faith should be confined carefully and

generally utilized only in those egregious cases

that entail concealed or misrepresented assets

and/or sources of income, lavish lifestyles, and

the intention to avoid a large single debt based

upon conduct which is akin to fraud misconduct

or gross negligence.

1      The court's inquiry will be an ad hoc one

2 wherein the court must ascertain whether the

3 petitioner has abused the provisions purpose or

4 spirit of Bankruptcy law.  The court's inquiry

5 is to follow a nonrestrictive approach and it is

6 to be an intensive inquiry taking into account

7 the totality of the facts and the circumstances.

8 Our Circuit Court has held and the parties

9 themselves have acknowledged that once a party

10 calls into question a Petitioner's good faith

11 the burden shifts to the Petitioner to prove his

12 good faith.

13      Recently in this district a set of 14

14 objective factors which courts have considered

15 in the context of a good faith analysis was

16 described.  The decision to which I refer is the

17 case of In re Glunk which is reported at 342

18 Bankruptcy Reporter beginning at page 717, a

19 2006 opinion of my colleague Judge Frank.

20      The utilization of objective indicia of

21 good faith or the absence thereof is typically

22 appropriate I indeed recourse to circumstantial

23 evidence will generally be necessary as the

24 Debtor will rarely acknowledge that he or she is

25 proceeding in good faith.

With that in mind the Court in Glunk

described the following 14 indicia.  1. Whether

the debtor has reduced his creditors to a single

creditor in the months prior to filing his

petition; 2. Whether the debtor failed to make

lifestyle adjustments or continued living an

expansive or lavish lifestyle; 3. Whether the

debtor filed the case in response to a judgment

pending litigation; 4. Whether the debtor made

no effort to repay his debts;  5. the unfairness

of the use of the debtor of Chapter 7;  6.

Whether the debtor has sufficient resources to

pay his debts; 7. Whether the debtor is paying

debts to insiders; 8. Whether the schedules

inflate expenses to disguise financial well-

being; 9. Whether the debtor transferred assets;

10. Whether the debtor is over-utilizing the

protection of the Code to the unconscionable

detriment of creditors; 11. Whether the debtor

employed a deliberate and persistent pattern of

evading a single major creditor; 12. Whether the

debtor failed to make candid and full disclosure

to the court and creditors; 13. Whether the

debts are modest in relation to assets and

income; and lastly, 14. Whether there are

1   multiple bankruptcy filings or other procedural

2   "gymnastics."

3       Against the back drop of the foregoing

4   authorities the Court has considered the

5   evidentiary record it has before it, the same

6   having been made at a hearing held on May 24,

7   2011.  Having done so the Court has concluded

8   with little hesitancy that this case presents

9   one of the most egregious instances of a bad

10  faith filing that the Court has been witness to

11  in over 17 years.

12      Indeed, the evidence of this is

13  overwhelming.  And evidence of practically every

14  single one of the 14 factors articulated in the

15  Glunk decision is present in this record.

16      The Movant is Rosalyn Hansen.  She is the

17  Debtor's sister-in-law and holds a judgment

18  against him in the approximate amount of $1.2

19  million.  The judgment was entered against the

20  Debtor in a lawsuit in the Court of Common Pleas

21  of Delaware County, Pennsylvania.

22      The lawsuit was instituted by Rosalyn

23  Hansen  in July of 2003.  In the lawsuit this

24  Hansen asserted that the debtor unlawfully

25  failed to pay her the proceeds of a $1 million

1   life insurance policy after the death of her

2   husband  who was the debtor's brother and a

3   business partner.  The insurance payment was

4   intended for the purpose of compensating Ms.

5   Hansen for her late husband's one half interest

6   in the Hansen brothers business which was a

7   wholesale paper brokerage firm called The Hansen

8   Paper Company.  An initial verdict against the

9   debtor was entered on April 21, 2006 after a

10  bench trial before the Honorable Charles Byrd,

11  II. That's movant's Exhibit 1.  The state

12  court's opinion in support of its verdict is

13  movant's Exhibit 2.  The judgment was later

14  modified to reflect offsets and as I just noted

15  it is now in the approximate amount of $1.2

16  million reference here is made to Movant's

17  Exhibit 3.

18      Thereafter Ms. Hansen attempted to execute

19  on the judgment by levying on among other

20  things, the stock of the paper company, which

21  company the debtor had by then incorporated.

22  The Debtor defiantly refused to turn over the

23  shares to the Sherriff of Delaware County

24  forcing the Movant, Ms. Hansen, to apply for

25  supplementary relief in aide of execution.

1    Her petition was granted by the State Court

2    in June of 2010.  The State Court's June order

3    and subsequent opinion denying an appeal thereof

4    are Movant's Exhibits 5 and 6.  Of significance,

5    in appealing the grant of the Movant's request

6    for aide and execution, the Debtor specifically

7    argued that the stock of the Hansen paper

8    company was immune from execution and levy

9    because the stock was held by he and his wife as

10   tenants by the entireties and that the State

11   Court had heard in directing the turnover of the

12   shares for that reason.

13       The State Court, however, specifically

14   considered and rejected that very argument

15   drawing on lengthy excerpts from its own prior

16   opinion issued following the Debtor's appeal

17   from the denial of post trial motions, the State

18   Court held that the Debtor had never had the

19   legal right to convey half of the paper company

20   shares to his wife without payment to the Movant

21   for her late husband's interest in the business.

22       In this respect the State Court considered

23   and dismissed a January 2002 stock certificate

24   offered by the Debtor which purported to reflect

25   that the Debtor and his wife had jointly owned

1   the corporation since 2002.  The Court stated

2   that the unauthenticated newly discovered

3   evidence was not genuine and was unreliable.

4   The Court in this respect also stressed, 1. That

5   as recently as 2008 the paper companies Federal

6   income tax return listed the Debtor, Mr. Hansen,

7   as its sole owner and two, that at her

8   deposition in March of 2010 the Debtor's spouse

9   testified under oath that she did not consider

10  herself an owner of the business and the company

11  was owned by the Debtor alone.

12      Of particular import is the August 31, 2010

13  opinion the State Court issued in support of its

14  denial of the Debtor's appeal of the Court's

15  granting of Ms. Hansen's petition for

16  supplemental relief in aid of execution.  The

17  opinion is an absolutely scathing denunciation

18  of the Debtor's actions both in connection with

19  his original misconduct in misappropriating the

20  life insurance proceeds to himself, but also in

21  connection with his subsequent machinations to

22  avoid having to pay the judgment debt.

23      This conduct was described by the court as

24  being willful and malicious.  The state court

25  opined that, "in short, there was no reason for

1   the debtor not to pay the Movant besides his own

2   unmitigated avarice and greed."

3       Undaunted the debtor sought a stay of a

4   state court order directing the turnover of the

5   stock. In November of 2010 the request was

6   granted by the state court conditioned upon the

7   posting of a bond in the amount of

8   $1,414,669.69. It appears that the debtor

9   appealed this decision to the Pennsylvania

10  Superior Court which, on December 14, 2010,

11  issued a similar order that is to say it granted

12  the debtor a stay conditioned upon the posting

13  of a bond in the amount that the Common Pleas

14  Court had directed. The stay was dissolved by

15  the Superior Court on January 5, 2011 after the

16  debtor failed to post a bond.

17      Still unbowed the debtor continued to defy

18  the state court order directing him to turn over

19  the stock certificates.  Ms. Hansen thereupon

20  filed what was her second motion to have the

21  debtor held in contempt and sought related

22  injunctive relief including the appointment of a

23  receiver for the paper company.

24      On January 14, 2011 the State Court issued

25  a rule to show cause relative to this request

1   and scheduled a hearing thereon for January 27,

2   2011.  The Debtor commenced his voluntary

3   Chapter 7 case on January 24, 2011 three days

4   before the scheduled hearing.

5        The Movant here seeks dismissal of this

6   case arguing that it is part of the Debtor's

7   continuing effort to evade the State Court's

8   order and perpetuate a fraud on Ms. Hansen and

9   the Court.  The Debtor respondent denies this

10  arguing that he is simply attempting to avail

11  himself of his legal rights under the Bankruptcy

12  Code and that nothing about his conduct is

13  improper.

14       As will be discussed, the Debtor's argument

15  is completely without merit.  Indeed as I have

16  previously noted the evidence against him is

17  positively overwhelming.

18       Analyzing any set of facts against 14

19  factors such as those that I described in In re

20  Glunk can be a bit unwieldy.  The Court in the

21  Glunk case itself recognize that ended therefore

22  condensed and combined 14 factors it had

23  identified down into a group of five based on

24  what it implied with some overlapping.   The

25  five condensed factors are, one the debtor's

extravagant lifestyle and ability to pay.   The

Glunk court said that it implicated of the 14

factors, factors one, two, four, six, seven and

13.   Condensed factor number two is the

disproportionate impact that bankruptcy relief

would have on one particular creditor or only a

few creditors as compared to other creditors.

     This factor it said had implicated factors

one, three, seven and 11 of the 14 factors.

Condensed factor three was whether there was

evidence of forum shopping or efforts to

manipulate the judicial process to thwart the

orderly determination of a creditor claim

pending in another court. The Glunk court said

that this implicated factors 11 and 14.

     The fourth condensed factor was whether

there was pre-petition fraudulent conduct to

place assets beyond the reach of creditors for

less than full and candid disclosure in the

Bankruptcy process itself.   The Glunk Court

indicated that this implicated factors 8, 9, 12

and 14.

     Finally, condensed factor five was whether

the end result, as to say if Bankruptcy Relief

were to be permitted might be perceived to be

1   fundamentally unfair or excessive.  The Glunk

2   court indicated that that implicated of the 14

3   factors, factors number 5 and 10.

4        In the Glunk case, the Court noted that the

5   Court could dismiss a case for any of the five

6   categories which it had described, but that in

7   its view the five factors were not all of equal

8   weight and only that a rare case would warrant

9   dismissal absent some evidence of misconduct by

10  the Debtor which implicated condensed factors

11  three and four.  There's little need for concern

12  on that score herein because evidence of all

13  five of the categories described in Glunk is

14  manifested clear on this record including most

15  particularly, categories three and four which is

16  where the Court will begin.

17       The evidentiary record is replete with

18  unrebutted evidence that the Debtor actively

19  sought to place assets beyond the reach of the

20  only creditor making a claim on them, that is to

21  say the Movant herein, Rosalyn Hansen.  The

22  state court in its opinion was express and

23  particularly harsh on this very point.  The

24  misconduct described included, among other

25  things, illegally moving individually held

1   assets to joint ownership with his spouse,

2   diversion of funds from the paper company,

3   blatantly misrepresenting the financial

4   condition of both himself and the paper company.

5   The Movant argues that the conduct described has

6   continued herein.  In this respect the Movant

7   points to the fact that despite the entry of a

8   final judgment by a court of competent

9   jurisdiction finding that the debtor alone owns

10  the paper company, the debtor scheduled the

11  paper company as a jointly owned asset in this

12  bankruptcy case and then assigned it a

13  liquidation value of zero and then claimed a 100

14  percent exemption in the allegedly worthless

15  asset.

16      Leaving aside the debtor's outrageous

17  prepetition conduct this action implicates the

18  debtors post position conduct and the question

19  of whether the debtor has made less than full

20  and candid disclosure in connection with the

21  papers filed in his bankruptcy case.  The

22  debtor's position in his sworn bankruptcy

23  filings stands in such stark contrast to pre-

24  bankruptcy events that it compels particular

25  scrutiny.

1    The Movant for her part anticipated this

2    and filed a motion in limine prior to the May 24

3    hearing seeking an order from this Court

4    precluding the debtor from offering testimony or

5    other evidence intended to prove that the stock

6    of the paper company was a joint as opposed to

7    an individual asset.  The debtor filed no

8    written response to the motion but counsel for

9    the parties offered argument on this point at

10   the outset of the May 24 hearing.

11   The Movant argued that the Debtor was

12   collaterally estopped from contesting the fact

13   that he alone owns the paper company.  In this

14   regard the Movant argued that the four part test

15   for the invocation of issue preclusion is

16   satisfied and that the issue of ownership arose

17   in the state court lawsuit.  The issue was

18   actually litigated.  The determination of

19   ownership was essential to the final judgment of

20   the State Court and the Debtor was represented

21   by Counsel.

22   Of these four factors, the Debtor takes

23   issue with only one.  That being the question of

24   whether the ownership issue was actually

25   litigated.  The Debtor contends that it was not.

However, the state court in its August 31, 2010

opinion addressed itself to this very contention

at length.

In this respect the State Court noted that

in its 2006 opinion it had expressly held that

the Debtor had no authority to convey his

brother's one half interest in the paper company

to anyone until he had legally obtained title to

it himself, something which he had never done.

As a consequence, any claim to an ownership

interest on the part of the Debtor's spouse had

to fail.  The Debtor nevertheless argued that

the state court erred in failing to hold a

fuller hearing that it did on the question of

the stock ownership in the context of the

petition then before it because it was required

to do so under Pennsylvania Rule of Civil

Procedure 3118a.  Again, however, the State

Court considered this argument and similarly

rejected it noting that controlling Pennsylvania

law holds that a fuller hearing such as the

Debtor desired was unnecessary and not mandated

where there were no issues of fact for the Court

to resolve in the proceedings before it the

Debtor was already bound by the State Court's

1   2006 determination that any purported transfer

2   of an ownership interest in the paper company by

3   the Debtor to his spouse was illegal.

4   Principles of res judicata applied to that

5   finding.   The court also noted however that

6   even if a fuller hearing had been conducted the

7   paper company's 2008 tax return, which listed

8   the debtor as its sole owner, together with the

9   sworn testimony of the debtor's own spouse who

10  disavowed any ownership interest in the company

11  would have been conclusive on the point in

12  question.

13       This court is bound to observe and not

14  disturb the state courts 2006 decision as to the

15  legality of the debtor's conduct by virtue of

16  the Rooker Feldman doctrine.  Similarly, for the

17  reasons which the state court itself expressed,

18  this Court found on May 24th that the question

19  of the stock ownership had actually been

20  litigated for purposes of its collateral

21  estoppel effect.  Accordingly, the Movant's

22  motion in limine to preclude the re-litigation

23  of that issue in the course of this contested

24  matter was granted.

25       The upshot of that is that the Debtor's

1    bankruptcy schedules are materially false.  This

2    is not the only flaw in the schedules, however.

3    As noted on Schedule B the Debtor valued the

4    paper company business on a liquidation basis

5    and claims its value to be zero.  Meanwhile,

6    Movant's exhibits 40 and 42 are the paper

7    company's 2008 and 2009 Federal Income Tax

8    returns.  In 2008 the paper company reported

9    gross revenues of over $20 million.  In 2009 the

10   paper company reported gross revenues of just

11   under $22 million.  For years, the paper company

12   has paid the Debtor compensation of between

13   $400,000 and $500,000 per year.  To make matters

14   worse, for years the Debtor failed to report a

15   significant amount of this compensation for tax

16   purposes.

17       It was only when the company's accountant

18   would apparently no longer turn a blind eye to

19   payments being made to the Debtor that were

20   carried on the company's books as a advances,

21   but which the company's accountant readily

22   acknowledged under oath in open court to be

23   compensation that the paper company began

24   submitting IRS form 1099 to the Debtor for the

25   payments in question.

1   To make matters worse yet in a thin attempt

2   to clean the situation up, the Debtor created a

3   promissory note for the years of payments to him

4   which the company had deducted and the Debtor

5   had failed to report.  Leaving aside what bears

6   every indicia of being blatant tax fraud, it is

7   utterly preposterous in the extreme for the

8   debtor to maintain as he does that the company

9   is essentially worthless.  The state court in

10  its written opinions explored this chapter of

11  this sorted of chronicle in great detail. For

12  present purposes it will suffice to emphasize

13  that it is yet another glaring misrepresentation

14  on the Debtor's part in this case.

15      The Court turns here from factor four, that

16  is to say whether there is evidence of pre-

17  petition fraudulent conduct to place assets

18  beyond the reach of creditors for less than full

19  and candid disclosure in the bankruptcy process

20  itself to factor three which is whether there is

21  evidence of forum shopping or efforts to

22  manipulate the judicial process to thwart the

23  orderly determination of a creditor claim

24  pending in another court.

25      Once again, the case against the Debtor is

1    exceedingly strong.  There can be no question

2    that the Debtor defiantly refused to submit to

3    lawful orders of the State Court following many

4    years of litigation.  When the day of reckoning

5    was finally at hand, the Debtor filed this

6    Chapter 7 case to avoid it.  There could

7    scarcely be a clearer case of forum shopping and

8    abusive behavior.

9         Astonishingly the Debtor himself

10    acknowledged on more than one occasion under

11    oath during the course of the March 24 hearing

12    that the reason that he commenced this

13    bankruptcy case was to evade having to pay the

14    judgment his sister-in-law holds against him.

15    He had offered her $250,000 payable for 50

16    months and he is apparently incensed that she

17    will not accept his offer in compromise because

18    he views himself to be the true victim.

19         Based on these factors alone, the present

20    case well warrants dismissal but still there is

21    more.  Factor number one speaks to the Debtor's

22    lavish lifestyle and his ability to pay its

23    creditors. The evidence brought forth at the

24    hearing on May 24 on this factor was little

25    short of shocking.  It was established beyond

1    question that the Debtor lives in a waterfront

2    mansion on the Corsica River in Centerville,

3    Maryland.  In a November 2009 deposition the

4    Debtor testified that the home had been

5    appraised at $4 million.  In this case the

6    Debtor has listed value of the home at

7    $2,348,000 which he says is based on its

8    assessed value.

9        The Debtor lists ownership of $764,145

10   personal property including over $700,000 in a

11   profit sharing plan. Amazingly, indeed, almost

12   beyond belief, in November of 2010 just two

13   short months before commencing this case the

14   Debtor purchased a $72,000 brand new 2011 BMW

15   automobile.  The purported justification for

16   this extravagance was to obtain better gas

17   mileage.  The Debtor also owns a vintage antique

18   auto valued at over $25,000.  A third late model

19   SUV valued at over $36,000.  The Debtor owns

20   three boats collectively valued in excess of

21   $80,000.  He belongs to the Marrium Cricket

22   Club, a fishing club and a yacht club.  The

23   Debtor lists average monthly income of just

24   under $25,000.  His housing expenses alone are

25   roughly $14,000 per month.

1      Over and above that he pays his wife's

2    credit card bill and has for years paid his

3    child's college expenses, a fact which is not

4    disclosed on the Debtor's schedules.  Indeed the

5    Debtor's schedule of expenses recites the

6    payment of $2,000 per month for dependents not

7    living at home but the Debtor's Schedule I

8    recites that he has no dependants.

9       In sum, the evidence established that the

10   Debtor lives a positively opulent lifestyle.  He

11   clearly made no downward adjustments to whatever

12   prior to commencing this case and he proposes to

13   simply continue living an opulent lifestyle

14   after this case only in an enhanced position

15   having rid himself of the Movant's claim against

16   him.

17      This implicates factor number 2 from the

18   condensed Glunk opinion factors.  That is to say

19   whether there is a disproportionate impact the

20   bankruptcy relief would have on one particular

21   creditor as compared to other creditors.

22      The evidence established that the Movant is

23   presently unemployed, it has an income of

24   roughly $50,000 a year in social security and a

25   few other miscellaneous sources.  She is paying

1  parent expenses from dwindling savings and has

2  children with medical issues.  The Movant is the

3  Debtor's principal creditor.

4      It seems clear that in anticipation of his

5  bankruptcy filing the Debtor ran up a few credit

6  card balances to create the illusion of having

7  other creditors.  The Court views this as a

8  transparent sham in as much as the paper company

9  historically paid all of the Debtor's rather

10  substantial credit card charges.

11      The only other unsecured debt which the

12  Debtor lists is the alleged loan he created with

13  his own company.  The Debtor lists a first

14  mortgage on his residence of approximately $1.7

15  million. Other things being equal there is

16  significant equity in that property even using

17  the Debtor's suspect valuation.

18      The Debtor, however, lists a second and a

19  third mortgage, each in favor of the paper

20  company's bank together totally approximately

21  $600,000.  This would exhaust the equity using

22  the Debtor's valuation.  However, in her moving

23  papers, the Movant states that at a Section 341

24  meeting of creditors, the Debtor conceded that

25  the larger, second mortgage was not in fact a

1    secured loan but was a contingent claim for a

2    guarantee of a business loan which had not been

3    called.

4        In his answer to the Movant's motion the

5    Debtor acknowledged that his schedules were

6    inaccurate but the answer is otherwise

7    incomplete.  At the hearing the Debtor offered

8    numerous exhibits in support of his position but

9    offered nothing whatever on the issue of the

10   business loan.  But the Court here has digressed

11   somewhat.  The point at issue is a consideration

12   of the relative impact the Debtor's discharge

13   would have on him versus other creditors and his

14   principal creditor the Movant, Rosalyn Hansen.

15       The answer is clear and totally without

16   doubt.  The debtor has no other creditors that

17   would be impacted if this case is dismissed and

18   the debtor is forced to pay the movant's

19   judgment.  It seems abundantly clear that from

20   his assets and income the debtor has the means

21   to pay the claim, but simply stubbornly refuses

22   to do so believing himself to be a victim.

23       The State Court, however, has found against

24   him on this point in the strongest possible

25   terms.  The Debtor it is clear nevertheless is

1  prepared to try anything to avoid having face

2  this reality.  Against the many challenges to

3  his good faith the Debtor offered virtually

4  nothing in the way of probative, persuasive

5  evidence of his good faith.  Allowing this case

6  to go forward will have a devastating impact on

7  the Movant and a discharge of her judgment would

8  bestow an enormous undeserved windfall on the

9  Debtor.

10      It is worth emphasizing here that in this

11  ruling the Court has not even discussed a

12  variety of other facts brought forth at the

13  evidentiary hearing, confining its discussion

14  here only to the more egregious aspects of the

15  case.  Suffice it to say, however, that in

16  reviewing the evidence the Court could not

17  discern one single factor which favored the

18  Debtor. It bears remembering, therefore, that as

19  the Debtor's good faith was legitimately placed

20  in issue, he bore the burden of establishing it.

21  But, he failed to so scarcely begins to state

22  the case.

23      In any event, this bring the Court to a

24  consideration of a final factor articulated by

25  the Court in the Glunk decision and that is

1  whether bankruptcy relief will produce a result

2  which is fundamentally unfair.  Unquestionably

3  the answer is yes.  As stated at the outset,

4  this Court has never seen a case so demonstrably

5  at odds with the provisions, purpose and spirit

6  of the Bankruptcy Code.  To permit this case to

7  proceed would be utterly unconscionable.

8      The Court is prepared therefore to grant

9  the motion to dismiss.  But prior to doing so in

10  light of the procedural gymnastic put into play

11  at 17 minutes past midnight this morning, it is

12  necessary to address the Debtor's belated motion

13  to convert this case to a case under Chapter 11.

14      Now, as I indicated the Debtor observes

15  correctly that under our Local Rules this is a

16  matter that can be disposed of without the need

17  for a hearing but I will address myself to a

18  variety of issues germaine to the motion.

19      In doing so I do note that I have just

20  recently had occasion to write on the subject of

21  good faith requirement in a Chapter 11 case.

22  The Philadelphia Rittenhouse Developer, 2011

23  Bankruptcy Lexus 1930 May 25, 2011.  In that

24  decision I point out that under the SGL Carbon

25  Decision in the Third Circuit there is a good

1   faith filing requirement for Chapter 11 and in

2   the moving papers for conversion Mr. Smith, you

3   observe that the Supreme Court itself has

4   recently addressed the question of whether there

5   is an absolute right to convert the case, the

6   Supreme Court decision being Marama (phonetic)

7   v. Citizens Bank of Massachusetts cited in 2007.

8   You point out correctly that that case, that

9   decision was issued in the context of an attempt

10  to convert a Chapter 7 case to a Chapter 13

11  case.  You go on to urge the Court, this Court,

12  to narrowly apply the Marama decision to only

13  those situations where a Chapter 7 debtor is

14  seeking to convert a case to a Chapter 13.  I

15  decline to do so.

16      I believe the principles that animate the

17  Marama decision are equally applicable in the

18  context of a proposed conversion from Chapter 7

19  to 11. I can see no reason why they would not

20  be.  Astonishingly you recited paragraph 12, the

21  Debtor submits that irrespective of the

22  articulated grounds for dismissal set forth in

23  Section 1112b 4 there were no grounds whatsoever

24  proven at the hearing on the instant dismissal

25  motion or otherwise that no such grounds exist.

1    That is an absolutely absurd proposition.

2        In any event in Marama the Court denied the

3    Chapter 7 Debtor's attempt to convert to Chapter

4    13 pointing out that if dismissal would occur

5    under the Chapter to which the case was proposed

6    to be converted it would be as if the Debtor

7    could not be a debtor under that Chapter thereby

8    implicating a prohibition on conversion.

9        Having had occasion just recently to

10    evaluate the good faith standard as it arises in

11    the context of Chapter 11 it is once again

12    overwhelmingly clear that this case would be

13    dismissed under Chapter 11.  If I can just turn

14    to that opinion.  There is a substantial

15    overlapping of the objective factors which

16    inform the analysis of whether debtor is

17    proceeding in good faith in Chapter 11 as

18    contrasted with Chapter 7 just to list them.

19        Here I was reciting factors such as were

20    articulated in the case of S.B. properties 185

21    Bankruptcy Reporter 198 Eastern District of

22    Pennsylvania 1995.  The Courts are instructed to

23    look at whether the Debtor has few or no

24    unsecured creditors, whether prepetition conduct

25    of the Debtor has been improper, whether the

1   petition effectively allows the Debtor to evade

2   Court orders, whether there are few debts to

3   non-moving creditors, whether the petition was

4   filed on the eve of foreclosure, whether there

5   was pressure from non-moving creditors, whether

6   the Debtor filed solely to create an automatic

7   stay.

8      These are all in my view different ways of

9   articulating the Glunk factors. This case would

10   be dismissed without hesitancy under Chapter 11.

11   Accordingly, based on the Marama decision the

12   Debtor would be an ineligible debtor under

13   Chapter 11, hence the motion to convert will be

14   denied and an appropriate order dismissing the

15   Chapter 7 case will be entered.

16      All right, thank you.  Anything further?

17      MR. GALLAGHER: Nothing further your Honor.

18   One question, the order dismissing would that be

19   a effective upon entry or effective immediately?

20      THE COURT: It will be effective as soon as

21   I sign the order.

22      MR. MILTZ: Thank you your Honor.

23   (Whereupon, the matter was concluded.)

24

25

1

2                        **C E R T I F I C A T I O N**

3

4                I, Michele Hasso, a transcriptionist and

5        Notary Public within the State of New York, do

6        hereby certify that this transcript is a true and

7        accurate transcript transcribed from the

8        electronic tape recording, to the best of my

9        ability and belief.

10

11

12                        _____ /s/ _____

13                                **Michele N. Hasso**

14

15

16    **Dated:** June 13, 2011

17

18

19

20

21

22

23

24

25